IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ZIA LAND AND WATER CONSERVATION, LLC,

     Plaintiff,

v.                                        No.  CIV 22-00515 DHU/JFR

EOR OPERATING COMPANY, et al.,

     Defendants.

## ORDER DENYING
## DEFENDANTS' JOINT MOTION
## FOR PROTECTIVE ORDER

Before the Court is Defendants' Motion for Protective Order.  Doc. 41.  The motion is

opposed and is fully briefed.  *See* Docs. 42; 47.  On December 21, 2022, the Court conducted a

hearing to consider argument from counsel.  Doc. 49 (Clerk's Minutes); *also see* Liberty Court

Player (ABQ-Zoom_22cv515_JFR_122122_Motion Hearing.dcr).  Having fully considered the

matter, and as explained below, the Court DENIES Defendants' motion.

## BACKGROUND

Defendants are lessees that conduct oil and gas extraction operations on two separate

tracts of the Peterson Ranch in Roosevelt County in southeastern New Mexico.  The land is

owned by Bryce and Jamie Peterson who have contracted with Plaintiff to bring the instant

lawsuit.  Doc. 42 at 1; Doc. 41 at 2.  Plaintiff alleges in its Complaint[1] that Defendants fail to

properly maintain their oil and gas facilities on the property, which has resulted in chronic leaks

---

[1] Plaintiff brings state law claims of trespass, unjust enrichment, negligence, and a violation of the Surface Owner Protection Act, and seeks specific performance regarding reclamation of the affected lands.  *See* Doc. 1.

of hydrocarbons and chlorides onto the surface and subsurface of the property.  Doc. 1, ¶¶ 16-18.
Plaintiff filed its lawsuit in the First Judicial District Court in Santa Fe, New Mexico, which suit
was then removed by Defendants to federal court.  Doc. 1.  Plaintiff has since filed a motion to
remand to state court, which motion is pending and fully briefed in this Court.  Doc. 17.  As a
result of that motion to remand, the Court delayed the entry of a scheduling order.   Doc. 18.

In the instant motion, Defendants complain that Plaintiff is engaging in unauthorized
"expert discovery" by testing soil at specific well facilities.  Doc. 41.  Defendants assert that
Plaintiff hired an engineering firm to utilize a bore-auger "to dig through EOR facilities and take
samples of alleged contamination by EOR and PT/Trust on their respective leaseholds."  Doc. 41
at 2.  Specifically, Defendants indicate that Plaintiff's expert provided notice that it intended to
drill four, four-foot holes at each of six EOR facilities, for a total of 24 holes.  Counsel for
Defendants responded by insisting that Plaintiff refrain from such activity "until resolution of
discovery issues."  *Id.* at 3.  Defendants assert that Plaintiff's planned drilling activities amount
to a "violation of the discovery moratorium."  *Id.*  Defendants state that the parties "have not
conferred as required by Fed. R. Civ. P. 26(f) and have not agreed to conduct discovery in this
matter."  *Id.* at 2.

Plaintiff responds that its planned drilling activity "is not discovery at all" but is simply
"Plaintiff's expert conducting preliminary testing on land owned by the Petersons…."  Doc. 42 at
1.  Plaintiff claims that the proposed test sites are outside of the areas where either Defendants
have active operations, occur on surface areas not used in the production or extraction of
minerals, and are not destructive to the evidence.  *Id.*  Plaintiff states it is simply preparing its
case, and that its "sampling event is not discovery, as nothing is being sought from Defendants."
*Id.* at 2.

ANALYSIS

To demonstrate good cause to justify the issuance of a protective order, a party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16 (1981).  Upon a showing of good cause, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Rule 26(c).  Whether to enter a protective order is within the sound discretion of the court.  *Thomas v. IBM,* 48 F.3d 478, 482 (10th Cir.1995).

The Court has previously delayed the entry of a Scheduling Order, based on the Plaintiff's Motion to Remand.  Doc. 18.  As a result, the Court has not yet ordered the parties to conduct a Rule 26(f) conference, nor has it issued case management deadlines that would govern the parties' discovery.  Formal discovery has not commenced.  According to Defendants, the Court's order to delay entry of a Scheduling Order results in a "discovery moratorium," which in Defendants' view means that no party may engage in discovery without prior Court approval.  Plaintiff doesn't necessarily quibble with the notion that discovery has not yet begun, but disputes that it is even engaged in discovery and asserts that its activities are simply investigative work related to the preparation of its case.

A primary question for the Court is whether the Court has the power to issue a protective order, for if the Plaintiff's planned soil testing does not qualify as "discovery," then the Court questions whether Rule 26(c) applies.  Indeed, the Court is aware of no authority, and Defendants provide none, that supports the notion that a district court may issue a protective order to prohibit a party's informal investigations before discovery has commenced.  Rule 26(c) addresses "Protective Orders" and states that "[a] party or any person from whom discovery is

3

sought may move for a protective order in the court where the action is pending...." Fed. R. Civ.

P. 26(c). Because discovery in the case has not formally commenced, the Court concludes that

the plain language of Rule 26(c) does not provide authority for a protective order. *See In re: Bofi*

*Holding Inc. Securities Litigation*, 318 F.R.D. 129, 133 (S.D. Cal. 2016) (when Rule 16(f)

conference had not occurred, it was improper for court to issue protective order since discovery

had not commenced).

Yet, even if the Court were to determine that it could issue a protective order under the

circumstances here, it would still conclude that the activities of Plaintiff are not improper

"discovery." "Discovery" is the process by which parties to a lawsuit obtain information,

through a compulsory process, that is relevant and material to the claims or defenses (but not

necessarily limited by the requirement of admissibility), so that the parties may appropriately

prosecute or defend their case. *See generally Landry v. Swire Oilfield Services, L.L.C.,* 323

F.R.D. 360, 375-83 (D.N.M. 2018) (discussing discovery's scope under Fed. R. Civ. P. 26).

Defendants fault Plaintiff for citing the 2nd Edition of Black's Law Dictionary in its attempt to

define "discovery," and instead refer the Court to the entry in the 11th Edition, which states that

discovery "includes the pretrial phase of a lawsuit during which depositions, interrogatories, and

other forms of discovery are conducted." *See* Doc. 47 at 1. To which the Court says: precisely!

District courts typically issue scheduling orders that set important deadlines for the parties'

discovery, as well as limits for the compulsory discovery methods that can be used. Those

methods generally involve Interrogatories, Requests for Production, Requests for Admission, and

Depositions. Rule 26 prohibits such "discovery" until the Court conducts a Rule 16 scheduling

conference and issues a Scheduling Order. Fed. R. Civ. P. 26(d), (f).

Consequently, when the Court contemplates "discovery" under the federal rules, it envisions the parties utilizing the formal tools at their disposal (e.g. interrogatories, requests, depositions) to obtain information from another source necessary and relevant to their claims or defenses.  Rule 26 of the Federal Rules of Civil Procedure doesn't explicitly distinguish between formal "discovery" and less formal pre-trial investigation, but Defendants point to Rule 26(d) in support of their position.  Rule 26(d) states that "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)…."  In their briefing, Defendants suggest that Plaintiff seeks information from Defendants: "[u]nder Plaintiff's theory of the case, the alleged contaminants that it is searching for belong to either EOR or PT/Trust." Doc. 41 at 5.  Yet at hearing, Defendants acknowledged they don't own the surface rights of the lease holdings, and therefore don't "possess" the land as contemplated by Rule 34(a)(2).[2] Regardless of the apparent inconsistency, if the Court understands Defendants' position correctly, the "source" from which Plaintiff seeks information is Defendants and their well-sites, and so Defendants claim the Plaintiffs are engaging in unauthorized "discovery."

The Court is not persuaded.  While the phrase "any source" is certainly open to interpretation, Rule 26(d)(1) still refers to the timing of "discovery," not the timing of an investigation or other disclosures.  Moreover, in referring to early Rule 34 requests, Rule 26(d) directly refers to one of the formal, compulsory discovery tools referenced in Scheduling Orders. It strikes this Court that, by doing so, the framers of Rule 26 contemplated "discovery" as the interrogatories, requests for admission and production, and depositions that parties formally undertake pre-trial.  Moreover, the Advisory Committee Notes to the Federal Rules of Civil Procedure distinguish "formal" discovery from a party's "informal" investigation.  For example,

---

[2] Defendants make no mention of Rule 34, either in their motion or reply.  At hearing, though, Defendants confirmed that they don't own the land where its oil and gas wells lie, thereby acknowledging that Rule 34 does not control.

in 1993, Subdivision (d) of Rule 26 was amended, and the Committee commented that "[t]he subdivision is revised to provide that formal discovery—*as distinguished from interviews of potential witnesses and other informal discovery*—not commence until after the parties have met and conferred as required by subdivision (f)." Rule 26, Adv. Comm. Notes, 1993 Amend. (italics added). The Advisory Committee Notes to the 1993 amendment also state that "[t]he parties should also discuss at the [Rule 26(f)] meeting what additional information, *although not subject to the disclosure requirements, can be made available informally without the necessity for formal discovery requests*." *Id.* (comment on amendment to subdivision (f) (italics added)). Clearly, the history of Rule 26 shows that there is a recognized distinction between formal "discovery" and informal investigation.[3]

Here, Plaintiff seeks to take soil samples from the land that it owns but which it leases to Defendants. By doing so, Plaintiff is not seeking information from Defendants. While Defendants complain that such "unilateral and secret discovery" disadvantages Defendants, they fail to demonstrate good cause as to where a "disadvantage" lies. At hearing, Defendants submitted that, should Plaintiff be permitted to proceed, then the Defendants would be forced to retain experts and spend monies that otherwise might not be spent. The Court surmises that the

---

[3] Caselaw supports the Court's conclusion that there is a clear distinction between formal discovery and informal information gathering. *See Am Bank v. City of Menasha*, 627 F.3d 261, 265 (7th Cir. 2010) ("Much of the information gathering that litigants do is not 'discovery' as the term is understood in the law."); *In re Bofi Holding, Inc. Sec. Litig.*, 318 F.R.D. at 133 (holding that informal investigations, including interviews of confidential witnesses, did not fall within the scope of formal discovery under Fed. R. Civ. P. 26 or for the purposes of the PSLRA); *Redus v. CSPH, INC.*, 2017 WL 2079807, at *6 (N.D. Tex. May 15, 2017) ("[T]he term 'discovery' as it is generally used in Federal Rules of Civil Procedure 26 through 37 does not generally include informally investigating facts and issues by contacting potential witnesses who are free to ignore the communication if they elect to do so, as opposed to formal discovery requests that are expressly governed by a Federal Rule and to which a party is legally required to comply."); *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1133 (N.D. Cal. 2002) (holding that, even where a court order is sought to permit former employees of defendants to speak voluntarily to plaintiffs' counsel, subsequent interviews of the former employees were not necessarily "discovery"); *In re Tyco Int'l Ltd. Sec. Litig.*, 2001 WL 34075721, at *3 (D.N.H. Jan. 30, 2001) ("Neither logic, tradition, the constitution nor the PSLRA prohibit interviewing prospective witnesses."); *cf.* Fed. R. Civ. P. 11(b)(3) (drawing distinction between "investigation" and "discovery").

instant case will depend heavily on expert testimony, so Defendants' argument that they will be prejudiced by being forced to incur expert expenses is not persuasive. And, regardless of the testing results, Plaintiff will almost certainly have to share this material with Defendants in formal discovery, so Defendants' claim that this effort by Plaintiff is in "secret" is unfounded. Nor will the sampling process impact Defendants' drilling activities, given that Plaintiff's expert will take samples from locations off the drill pad sites. Plaintiff's offer to "split sample" with Defendants, which the Court understands would allow Defendants to participate in the selection of drill sites and handling and testing of samples, also militates against Defendants' claim that the testing is one-sided and otherwise slanted. The Court is not persuaded that the proposed core sampling by Plaintiffs results in prejudice to the Defendants.

Finally, toward the end of the hearing, counsel for Defendant PT/Trust acknowledged that his client would be interested in participating in the sampling process, and that if given sufficient notice could arrange for expert witness participation. When asked by the Court if Defendant EOR would similarly participate, counsel for EOR responded affirmatively. For its part, Plaintiff's counsel confirmed that its "split sample" offer was still open. While the Court will not order Defendants to engage in the informal discovery process and agree to split sample, it certainly encourages the parties to work cooperatively in the process. After all, whether this matter remains in federal court or is remanded to state court, the information that is being sought by Plaintiff—possible contamination by Defendant(s) of the surface and subsurface of the lease holdings—is directly relevant to the lawsuit and may be vital for the parties to both prepare the case for trial and/or reach a negotiated settlement. However, should Defendants not act reasonably diligently in coordinating their experts' involvement in the split sampling process,

nothing in the Court's order prevents Plaintiff's expert from proceeding with its testing on its own schedule.

Having heard from the parties, the Court concludes that Defendants lack good cause to obtain a protective order.  The Court is satisfied that Defendants' motion is not well-taken and should be DENIED.

IT IS SO ORDERED.

JOHN F. ROBBENHAAR
U.S. Magistrate Judge