IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ZIA LAND AND WATER
CONSERVATION, LLC,

      Plaintiff,

v.                                No. 1:22-cv-00515-DHU-JFR

EOR OPERATING COMPANY,
PT OIL & GAS, LLC, and
THOMAS AND RUBY PARKINSON TRUST,

      Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

      This matter is before the Court on Plaintiff Zia Land and Water Conservation, LLC's ("Plaintiff" or "Zia") Motion to Remand. Doc. 17. Defendant EOR Operating Company ("EOR") responded in opposition, Doc. 22, and Defendants PT Oil & Gas, LLC and the Thomas and Ruby Parkinson Trust (collectively "PT/Trust") filed a combined response in opposition. Doc. 25. Because this action lacks complete diversity of citizenship under 28 U.S.C. § 1332(a) and because the facts do not raise a claim of fraudulent misjoinder, Zia's motion to remand will be **GRANTED**.

## BACKGROUND

      Zia filed its original complaint in the First Judicial District of New Mexico, Santa Fe County, on June 1, 2022. Doc. 1, 13.[1] The complaint named three defendants: EOR, PT, and the

---

[1] The Court refers to page numbers imprinted by the Court's Case Management/Electronic Case Files system.

Trust. Zia is the assignee of Bryce and Jaimi Peterson ("the Petersons"). The relevant oil and gas operations of PT/Trust are conducted jointly. All parties are citizens of New Mexico except for EOR, which is a Texas corporation.

According to Zia, the Petersons operated a ranch ("the Ranch") in Roosevelt County, New Mexico. PT/Trust operated a tank battery and oil wells on the Peterson's ranch, including the Weathersby #001, #002, #003, #004, and #006 wells. EOR operated oil wells on an adjacent area of the Peterson Tract, the Milnesand Unit. According to Zia's complaint, which was filed on behalf of the Petersons, EOR had "failed to properly maintain its oil and gas facilities" on the Ranch, and that PT/Trust had likewise "failed to properly maintain their oil and gas facilities" on the Ranch. *Id*. at 15. According to Zia, the Defendant had "failed to properly and promptly detect and remediate leaks, spills, and releases…which has resulted in the contamination of the surface and subsurface" of the Ranch. *Id*. The Petersons demanded that the Defendants "remove the contaminants" but the Defendants "failed and refused." *Id*. at 16. Zia claimed that the Petersons have sustained damage resulting from these failures of all three defendants. Zia's original complaint included counts of Trespass, Unjust Enrichment, Negligence, and two counts under the Surface Owners Protection Act ("SOPA"), N.M. Stat. Ann. 1978, §§ 70–12–1 to –12–10. Zia brought no claims under federal law.

EOR filed a Notice of Removal on July 13, 2022, in which it asked that the claims against it be severed from those against the other defendants and heard in federal court in the District of New Mexico under federal diversity jurisdiction. EOR acknowledged that there is not complete diversity between Plaintiff and PT/Trust.  However, EOR asked the Court to apply the doctrine of procedural misjoinder, also known as fraudulent misjoinder, sever the claims, and remand those against the non-diverse Defendants to state court.

According to EOR, "EOR and PT/Trust do not operate on the lands of the other." *Id.* at 1. In support of its arguments, EOR filed the declaration of landman William L. Boyd, who served as EOR's Land and Regulatory Manager for EOR. According to Boyd, the parties have no common operations. *See id.* at 29 ("Pt/Trust's oil and gas operations take place on land where EOR has never conducted oil and gas operations."). Boyd stated that in addition to the Weathersby wells, PT/Trust operated a tank battery on its tract. Boyd's declaration also detailed the distances between the operations of EOR and PT/Trust. He stated that although the tracts were adjacent, no EOR operation is nearer than 1,335 feet from the closest PR/Trust well or nearer than 636 feet from the PR/Trust tract. Boyd concluded that "neither Plaintiff's complaint nor the Peterson production establish[ed] any contamination, leaks, spills, releases, or failures to reclaim land common to EOR or PT/Trust." *Id.* at 32.

Zia moved to remand on August 12, 2022. Zia asked that the claims against EOR not be severed, and the entire suit be remanded to the First Judicial District of New Mexico. Zia argued that fraudulent misjoinder should not apply because the three defendants are properly joined in accordance with Federal Rule of Civil Procedure 20(a). Zia also argued that the claims against each Defendant arise under common transactions or occurrences and present similar issues of fact and law and therefore fraudulent misjoinder would not apply, even if the Court were to adopt it.

Zia submitted evidence in support of its argument that EOR and PT/Trust are not entirely separate. Zia averred that "EOR's Milnesand well #512 ties directly into the PT/Trust tank battery." Doc. 17 at 6. To support this notion, submitted the affidavit of Patrick McMahon, Zia's manager. McMahon explained that he "physically walked out the entirety of the above ground flow line from the PT/Trust Tank Battery to Milnesand #512 and took pictures at various points along the line while I did so." Doc. 17-2, 2. McMahon further claimed that a buried flowline

exists between Milnesand well #512 and PT/Trust's tank battery and that the buried flowline has impacted the land surface. Zia also submitted numerous photographs of the connection McMahon claims to have seen, including aerial photographs that allegedly show the connection between the well and the tank.

EOR's Response to Zia's Motion to Remand was filed on August 25, 2022. EOR continued to dispute that it had any common operations with PT/Trust. EOR characterized the flowline described by McMahon as "a water line owned, operated, maintained, and repaired by the prior surface owner [Luman] that ran from the Weathersby Tank Battery to the surface owner's [water] tank that was not on the Milnesand Unit #512." Doc. 22, 1. EOR averred that the previous surface estate owner, Luman Properties, owned the water line in question and sold it to the Petersons when they purchased the surface rights to the land. EOR asserted that neither EOR nor PT/Trust ever "owned, operated, maintained, or repaired" the water line described by McMahon. *Id*. at 4. EOR supported these assertions by including a sworn statement of Leeman Joe Luman, the previous owner of the surface estate.

Zia filed a reply brief on September 9th, 2022. Zia continued the debate about the flowline. The parties agree that when the Petersons purchased the Ranch the warranty deed "carve[d] our and reserve[d] for Luman [the then-owner of the mineral estate] any and all equipment and improvements associated with oil, gas, and other interests. Doc. 32 at 3. Whatever the flowline's purpose, Zia claimed it was related to oil and gas and therefore had been transferred by Luman to either EOR or PT/Trust, the current owners of the mineral rights.

Zia re-emphasized the nature of the damage to the Petersons' ranch. Zia repeatedly described the ranch as "riddled with contamination" and noted for the first time that the "contamination…continues to migrate daily [and] is not limited to [EOR and PT/Trust's] areas

of operation. *Id*. at 3. Zia continued to characterize the damage to the ranch as the combined efforts of all three defendants. Zia stated clearly that the contamination "goes beyond the boundaries of [the defendants'] areas of operation." *Id.* at 10.

**LEGAL STANDARDS**

Federal courts are courts of limited jurisdiction. *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,* 25 F.4th 1238, 1250 (10th Cir. 2022). Federal jurisdiction must have a statutory basis. *Morris v. City of Hobart,* 39 F.3d 1105, 1111 (10th Cir. 1994). One statute under which federal jurisdiction may arise is 28 U.S.C. § 1332(a), which requires: (i) complete diversity among the parties and (ii) that the matter in controversy exceeds $75,000, exclusive of interest and costs. Complete diversity requires diversity between all plaintiffs and all defendants, meaning that no plaintiff is a citizen of the same state as any defendant. *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) (citing *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89 (2005)).

A defendant may remove a case to federal court in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. The removing defendant bears the burden of proving by a preponderance of the evidence that all the requirements for diversity are met. *Dutcher v. Matheson*, 733 F.3d 980 (10th Cir. 2013); *see Martin v. Franklin Cap. Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001), *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014). Because federal courts must enforce Congress' requirement that federal jurisdiction have a statutory basis, cases removed from state court are subject to a presumption against removal. *Id.* at 1289-1290. The burden on a removing defendant is formidable. *See Fajen v. Found. Rsrv. Ins.*

*Co.*, 683 F.2d 331, 333 (10th Cir. 1982). Federal jurisdiction statutes are "strictly construed," and "all doubts are to be resolved against removal." *Id*.

Defendants may be properly joined in a lawsuit if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a). If a diverse defendant believes that a non-diverse defendant has been improperly joined only to prevent a state court action from being removed to federal court, the defendant may seek removal based on the doctrine of fraudulent misjoinder, also known as procedural misjoinder. *Am. Nat'l Bank & Trust Co. v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991). "Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action." *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. 2010). Fraudulent misjoinder requires a removing defendant to show either: (i) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court or (ii) actual fraud in the plaintiff's pleading of jurisdictional facts. *Dutcher*, 733 F.3d at 988. When a removing defendant asserts fraudulent misjoinder, "the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964).

The Tenth Circuit has discussed fraudulent misjoinder in several cases but neither adopted nor rejected the doctrine. *See Parson v. Johnson & Johnson*, 749 F.3d 879, 893 (10th Cir. 2014) (declining to review existence of diversity jurisdiction because "consideration of this issue would require us to determine whether to recognize the doctrine of 'fraudulent misjoinder' … a rule that

the defendants admit has not yet been adopted within this circuit") (citation omitted); *Lafailier*, 391 Fed. App'x. at 739 ("There may be many good reasons to adopt procedural misjoinder, as the Insurers argue. But we need not decide that issue today…"). The Tenth Circuit has noted that "[t]he defendant seeking removal bears a heavy burden of proving fraudulent misjoinder." *Dutcher*, 733 F.3d at 988 (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

The Tenth Circuit has contemplated two possible remedies for fraudulent misjoinder. One remedy, discussed in *Dutcher*, would allow a federal court to simply ignore the non-diverse defendants while taking jurisdiction over the claims against the diverse defendants. *See id.* at (citing *Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881–82 (10th Cir. 1967) (discussing the trial court ruling that fraudulently misjoined defendants "should be ignored for the purposes of assessing complete diversity."); *Flores-Duenas v. Briones*, No. CIV 13-0660 JB/CG, 2013 WL 6503537, at *36 (D.N.M. Dec. 1, 2013) ("if the claims against the nondiverse defendant are misjoined, the Court 'drops'—ignores, never discusses again—the party, rather than dismisses a claim"). The second remedy, discussed in *Lafalier*, would allow a federal court to sever the actions against the defendants, take jurisdiction over the claims against any diverse defendants, and remand the claims against non-diverse defendants to state court. *See Lafalier*, 391 F. App'x at 739 ("Removing defendant argued that the district court should have recognized the misjoinder, severed the two sets of claims, and allowed the claims against the insurance companies to proceed in federal court.").

## ANALYSIS

EOR did not assert the first possible application of the doctrine of fraudulent misjoinder, *i.e.*, that Zia was unable "to establish a cause of action against the non-diverse party in state court."

7

*Dutcher*, 733 F.3d at 988. Instead, EOR's arguments appear to rely on the second prong, namely that "actual fraud in the plaintiff's pleading of jurisdictional facts" occurred. *Id.* According to EOR, the claims against the joined Defendants did not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" under Fed. R. Civ. P. 20(a). As noted earlier, EOR points out that its landman, William Boyd, stated in his sworn statement that "EOR does not and has never performed any oil and gas operations on the PT/Trust tract," and vice-versa. Doc. 1 at 30.

The Court concludes that the claims against the Defendants were properly joined. EOR did not dispute that its operations were conducted on a tract of land directly adjacent to a tract on which PT/Trust operated. EOR had operations less than 1,000 feet from the PT/Trust Tract. And Zia asserted the connection between EOR's Milnesand well #512 and PT/Trust's tank battery amounted to a common operation between all three Defendants. It also referred to a separate buried flowline in the same area. EOR disputed that the flowline had any connection to either defendant, claiming that the flowline had been deeded to the Petersons. But, regardless of the provenance of that particular flowline, the complexity of that single factual dispute suggests that these defendants are appropriately joined as defendants in a single suit. Where each party conducted oil and gas operations less than 1,000 feet from the other's tract, the Court cannot conclude simply from pleadings that any damages from those operations to the Ranch represented separate occurrences or transactions. Rule 20(a) gives a plaintiff the right to make claims in the alternative, and where the damage to the property is alleged to be widespread and the defendants have conducted oil and gas operations in such propinquity, the case arises from a common "series of occurrences" within the meaning of Rule 20(a).  Because the Defendants were properly joined, the doctrine of fraudulent misjoinder is therefore inapplicable. *See Lafalier*, 391 F. App'x at 739

8

(stating that fraudulent misjoinder occurs when "the plaintiff has no reasonable procedural basis to join such defendants in one action.").

Bolstering the Court's conclusion is the lack of apparent wrongful intent on Zia's part. Cases discussing the doctrine of fraudulent misjoinder often include a suggestion of wrongful intent on the part of the plaintiff to prevent removal and force the action into state court. Whether some level of heightened intent is required is the subject of extensive debate among courts and scholars. *See Flores-Duenas*, 2013 WL 6503537, at *33. EOR never directly imputed a bad faith motive to Zia, although it did note that "a less charitable explanation is that [Zia's] misjoinder of claims was calculated to deprive EOR of its right to removal." Doc. 1 at 8. But the Court does not believe that the record supports this conclusion. Zia has offered a plausible and proper explanation for joining the three Defendants. Zia explained that it joined the three defendants because it wanted to "avoid a situation in which EOR tries to avoid liability because of PT/Trust's operations and vice versa," which is a logical explanation for joining the Defendants in one action. Doc. 17 at 6.

In summary, the Court concludes Zia's causes of action against EOR and PT/Trust are properly joined under Fed. R. Civ. P. 20(a). Because the claims are properly joined, the Court is left with the presence of non-diverse parties and therefore diversity jurisdiction is absent. Because subject matter jurisdiction has not been established, this matter is remanded to state court. *See* 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.")

**CONCLUSION**

Defendants EOR, PT, and the Trust were properly joined under Rule 20(a) and Zia has a cause of action against PT and the Trust in state court. Because the Court lacks subject matter jurisdiction over this action, Plaintiff's Motion to Remand (**Doc. 17**) is **GRANTED**.

The Clerk of Court is directed to **REMAND** this entire action to the First Judicial District of New Mexico, Santa Fe County and to administratively close this case.

**IT IS SO ORDERED**.

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE